UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-8 DAVID MILLER,
D-9 NATHAN MILLER,
D-10 WILLIAM MILLER, ET AL.

    Defendants.
_____/

Case No. 09-20174

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS DAVID MILLER'S, WILLIAM MILLER'S AND NATHAN MILLER'S MOTIONS TO SUPPRESS [105, 124, 122, 130, 133]**

Defendants David Miller (D-8), Nathan Miller (D-9), and William Miller (D-10) are each charged in a 12 Defendant, one-count Indictment with conspiracy to alter, remove, and obliterate vehicle identification numbers in violation of 18 U.S.C. §§ 511 and 371. This matter comes before the Court on Defendants David Miller's, Nathan Miller's, and William Miller's motions for an evidentiary hearing and to suppress evidence seized pursuant to a search warrant issued and executed on February 20, 2006 and February 21, 2006 [105, 124, 122, 130, 133]. Defendant David Miller also joins in Defendant William Miller's motion to suppress [129].

An evidentiary hearing was held on November 16, 2009 and continued on November 18, 2009. The Court fully credits the testimony of the law enforcement officers at the hearing and finds that (1) the affidavit supporting the search warrant was sufficient to

establish probable cause; (2) the search warrant was not overly broad; (3) despite some inaccuracies, the search warrant described the premises to be searched with sufficient particularity to satisfy the Fourth Amendment; and (4) the scope of the warrant was not exceeded during the search.[1] Defendants' motions to suppress are DENIED.

**I.    Facts**

In February 2006, the Brownstown Township Police Department arrested Co-Defendant David T. Jones (D-6) for operating a stolen vehicle. After waiving his *Miranda* rights, Jones described for investigators a large ring of thieves specializing in stealing vehicles that were subsequently either "re-tagged" with new Vehicle Identification Numbers ("VINs") or dismantled/chopped up to facilitate the sale of their parts. Jones explained that this group of thieves operated by getting VIN numbers, having keys made, stealing the vehicles with the manufactured keys, and then taking them to one of five locations for re-tagging or chopping. Jones did not know the addresses of these five "chop shops" but did know where they were located. Jones specifically identified the trucking business located at 13500 Sanders, Courtesy Transfer, as a location where he had brought numerous stolen vehicles for storage, re-tagging, and/or dismantling. (11/18/09 hrg., McCarthy testimony; Def.'s Ex. 32, Det. McCarthy Suppl. Rpt. at 6.)

On February 20, 2006, after interviewing Jones, Detective Michael McCarthy of the Brownstown Township Police Department and FBI Special Agent Ted Brzezinski traveled with Jones to Courtesy Transfer. (*Id.*) He knew where the business was located, but did

---

[1] In light of the Court's decision, there is no need to address the Government's additional argument that, because the officers acted in good faith, the exclusionary rule should not apply. *See United States v. Leon*, 468 U.S. 897 (1984).

not know its address. From the street outside the fenced lot, Jones pointed to the building with the 13500 address as well as a building to the left of that building and identified it all as Courtesy Transport. It appeared to Agent Brzezinski to all be one parcel of property. (11/16/09 Hrg., Agent Brzezinski testimony.) Detective McCarthy also testified that the main building, the building to its left identified at the evidentiary hearing as the "paint shop," and the weigh/scale buildings all appeared to be one parcel of property. (11/18/09 Hrg., Det. McCarthy testimony.) Detective McCarthy testified that he obtained an address off the main building – 13500 Sanders – but did not see one on the "paint shop." He further testified that he would have included an additional address if he had observed one. (*Id.*) It was his intent to describe and obtain a search warrant for the main building, the paint shop, all other out-buildings on the property, and the entire premises. (*Id.*)

While with the officers at the Sanders property on February 20, 2006, Jones pointed out stolen vehicles in the yard and described how other vehicles would be dismantled in buildings at this location. Jones also showed Det. McCarthy a stolen Ford F-150, located just outside the Sanders property on Fordson Road. Det. McCarthy was able to confirm that this Ford F-150 had been stolen. Jones informed Det. McCarthy and Agent Brzezinski that a tow truck in the yard near the "chop shop" was a "re-tag" and that the parts on the back of that tow truck belonged to the stolen Ford F-150 located on Fordson Road. Jones also identified a bulldozer in the lot of 13500 Sanders as being stolen. (11/18/09 hrg., Def.'s Ex. 32, Det. McCarthy Suppl. Rpt. at 6.)

At the evidentiary hearing, the building Jones called the "chop shop," was identified as the "paint shop" and the building that houses Defendant Nathan Miller's business, Courtesy Collision LLC. It has an address of "13552A" stenciled on one-half of one block

3

on the side of the building that faces Sanders. A defense witness testified that this address was placed on the building in 2004.[2] (11/18/09 Hrg., Def.'s Exs. 20-22.)

Detective McCarthy testified that he studied the location so as to provide an accurate description of the premises for the search warrant. When facing the yard from the street, Detective McCarthy noticed a main building to the right of the yard with the address of 13500 and several smaller buildings/garages within the fence of the business. He also noted a weigh scale for trucks that runs along the left hand side of the property. The business itself sat on a large yard in a non-residential district with the next separate address being several hundred feet down the street. Both Detective McCarthy and Agent Brzezinski testified that they did not see any address on any of the buildings other than "13500" on the main building.

In addition to directing Detective McCarthy and Agent Brzezinski to the Sanders property on February 20, 2006, Jones also directed them to four other properties that he said stolen property was taken to be either re-tagged or chopped. (11/18/09 Hrg., Def.'s Ex. 32, McCarthy Suppl. Rpt. at 6.) Later that same day, Detective McCarthy was able to secure search warrants for all five properties. (*Id.* at 7.)

As to the Sanders property, Detective McCarthy sought and was granted a search warrant from a State of Michigan district court judge, Judge Richard Page. His affidavit in support of the search warrant provides that:

---

[2]Other photographs show the address of "13552A Sanders" attached to siding-type material and nailed to another side of the paint shop building that has garage-type doors. (11/18/09 Hrg., Def.'s Exs. 23-24.) There was no testimony that this address was present in 2006.

4

> Affiant has been the lead investigator on numerous felony cases, as well as assigned to the FBI narcotics task force for over seven years investigating the use, sale, and distribution of narcotics.  Further, officers of the Brownstown Police Department stopped a subject in a stolen vehicle.  The subject was later identified as David Thomas Jones II.  Jones II advised that he and several other subject have been stealing vehicles for a period of time.  The vehicles that are stolen are then transported to the area of 13500 Sanders where the vehicles are dismantled/chopped – valued items on the vehicle are then taken into 13500 Sanders, which is identified as Courtesy Transport.  Once these items go into Courtesy Transport, the business owner at Courtesy Transport stores the stolen property and also attempts to sell the stolen property.  Subject Jones II also advises that he and two other subjects stole a bulldozer.  He described the bulldozer and was able to identify the bulldozer in the lot of Courtesy Transport.  Subject Jones II also took this Detective, as well as another officer, over to the area where they chopped-up one of the vehicles.  This vehicle was identified as a stolen vehicle and both subjects observed the parts from the dismantled F-150 Pickup truck to be located on the bed area of the stolen tow truck.  The tow truck Jones II also stated was stolen.  Subject Jones has intimate knowledge of where the stolen vehicle was at – how the vehicle was dismantled – and was also able to point out where the stolen items were in the lot of Courtesy Transport – lending credibility to his story.  Subject Jones II states they had stolen several vehicles before – the modus operandi in which they steal the vehicles is that he gets the VIN off the vehicle, gives the VIN to a subject by the name of Jimmy Wallace, and a short time thereafter, Jimmy Wallace is able to produce a counterfeit key for the vehicle, at which time subject steals the vehicle with a key.  Note:  When subject Jones II was apprehended in Brownstown, the vehicle which he had stolen did have a manufactured key for the ignition.

(N. Miller Mot., Ex. 2, Aff. at 2.)  The Search Warrant described the place to be searched as:

> 13500 Sanders, Detroit, MI – the name of the business is Courtesy Transport, as well as any out-buildings or garages.  The business is described as a single-story blue-block building with a two-sided drive going into the front of the business off of Sanders.  The business and yard are located on the southeast corner of Sanders and Fordson.  The entire yard is encompassed by a cyclone fence with at least one out-building located directly behind the main office.

(N. Miller Mot., Ex. 1, 2/20/06 Search Warrant.)  Detective McCarthy testified at the evidentiary hearing that the physical description in the warrant was meant to describe the main building with the address of 13500 on it.  (11/18/09 Hrg., McCarthy testimony.)

5

The Search Warrant described the property to be searched for and seized as:

> One tow truck, either re-tagged or still listed as stolen, one bull-dozer (should be listed as stolen), as well as one cut-up/chopped vehicle on the rear of the stolen tow truck – as well as any other items or any other stolen property, or proceeds from the stolen property, including, but not limited to, tools or types of tools used in dismantling vehicles or to assist in the dismantling of vehicles, as well as any other paperwork establishing ownership of the business at 13500 Sanders.

(N. Miller Mot., Ex. 1, 2/20/06 Search Warrant.)

The warrant was executed around 11:00 p.m. on February 20, 2006 and continued into the morning of February 21, 2006. Law enforcement officers first searched the main building, bearing the address of 13500 Sanders. Among the items found was a lease agreement for 13552 Sanders between David and William Miller and Nate Miller of Courtesy Collision LLC. Agent Brzezinski testified that he did not pay attention to the address on the lease. (11/16/09 Hrg.) While inside this main building, Agent Brzezinski noticed monitors that flashed security camera footage of various vantage points of the business, including its out-buildings, the yard, and outer gates. One of the monitors showed the inside of one of the out-buildings that appeared to be a paint shop. This "paint shop" was later identified as the building that Defendants David and William Miller leased to Defendant Nathan Miller in January 2005 and housed Nathan's business, Courtesy Collision LLC. (*Id.*)

After searching the main building, officers then moved to the out-building that appeared to be a paint shop. That building was located within the Courtesy Transfer fence and to the left of the main gate and the main building. Officers searched this building and found a stolen air compressor, stolen tow truck, parts of a stolen Ford F-150, and a stolen truck cap/topper.

Defendants argue that the building that houses Courtesy Collision LLC was clearly marked with the separate address of 13552A Sanders. Although Det. McCarthy and Agent Brzezinski testified that they did not observe this separate address at the time they viewed the property with Defendant Jones before obtaining the Search Warrant or during the search, they now concede that the building does have the address of 13552A stenciled on it. Photographs introduced at the evidentiary hearing held on November 18, 2009 show that "13552A" is stenciled on one-half of one of the blocks on the side of the building that faces Sanders. A defense witness testified that he stenciled the address on the side of the building in 2004 after Defendants David and William Miller purchased the property it sits on. (11/18/09 Hrg., Def.'s Exs. 20-21.)

Defendants David and William Miller own the property located at 13500 Sanders and 13552 Sanders. On May 11, 2004, W & D Miller Properties, LLC, of which David and William Miller are members, purchased the parcel of property and structures located on 13552 Sanders. (D. Miller Mot., Ex. 3, 5/11/04 Warranty Deed.) In 2004, after the purchase, the address "13552A" was stenciled on the building that was identified at the evidentiary hearing as the "paint shop."

In January 2005, David and William Miller leased a portion of their property to Defendant Nate Miller. The leased premises was described as "13552 Sanders a 3 Bay Garage," and was leased to "Courtesy Collision LLC Nate Miller" for three years. (D. Miller Mot., Ex. 4, 1/11/05 Lease.)

Each of the Defendants argues that the description in the Search Warrant inaccurately describes their business premises and thus all evidence seized in the search must be suppressed. Defendant Nathan Miller's motion to suppress asserts that the building

7

located at 13552A Sanders is a separate premise from 13500 Sanders. Moreover, he argues, it is a two-story building, not one-story and thus does not fit the physical description provided in the search warrant. (N. Miller Mot. at 2.) In contrast, Defendant William Miller's motion asserts that the building described in the search warrant does fit the physical description of the building located at 13552 Sanders; i.e., "a blue-block (cinder) building with a two-sided drive going into the front of the building off Sanders, located on the southeast corner of Sanders and Fordson," rather than the building located at 13500 Sanders which has a brown brick exterior and is adjacent to, but east of 13552 Sanders. (W. Miller Mot. at 6.) Defendant David Miller agrees with Co-Defendant William Miller, arguing that the building described in the search warrant is similar to the physical description of the building that houses Courtesy Collision LLC, a vehicle body and paint shop run by Co-Defendant Nathan Miller and located at 13552 Sanders. (D. Miller Mot. at 8.)

In response to Defendants' motions, the Government provides a plot survey map from the City of Detroit for the 13500 block of Sanders that is current as of October 30, 2009. (Gov't Resp., Ex. 3, plot map.) The first page of the Plot Map, along the bottom right hand side, shows 13500 Sanders and the main building of Courtesy Transfer sitting along the right hand boundary of the property. It also shows at least two out-buildings. One is directly behind the main building and is labeled "Private Garage." The other out-building is to the left of the main building and is labeled "Truck Rep." No additional address is provided for either of these buildings.

At the evidentiary hearing held on November 16 and 18, 2009, Defendants introduced several 2009 aerial photographs of the subject property from Google. (11/16/09 and

8

11/18/09 Hrg., Defs.' Exs. 6-8, 34.)  Defendants used these photographs to support their argument that Det. McCarthy could not have mistaken 13500 Sanders and 13552A Sanders as one parcel of property with a main building to the right and an out-building or garage to the left.  Rather, Defendants argue, Det. McCarthy must have known that there were two separate businesses with two separate addresses operating on Sanders near the corner of Fordson at the time he prepared the search warrant in February 2006.

## II. Analysis

Defendants raise numerous arguments that the warrant and subsequent search were invalid.  The Court first addresses Defendants' arguments that the evidence seized during the February 2006 search should be suppressed because the affidavit supporting the search warrant was insufficient to establish probable cause.  Specifically, Defendants argue that the affidavit failed to provide any information establishing the reliability of the named informant.

### A. Probable Cause - Sufficiency of the Affidavit

#### 1. General Principles

When determining the sufficiency of an affidavit, the Court evaluates whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence described would be found at the place to be searched.  *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001).  Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.  *Gates*, 462 U.S. at 236; *United States v. Greene*, 250 F.3d at 479.   The magistrate's determination of probable cause is afforded great

deference and is not set aside unless the Court finds that the magistrate's discretion was arbitrarily exercised. *United States v. Allen*, 211 F.3d 970, 973 (2000) (*en banc*).

The Court reviews the affidavit supporting a search warrant in a commonsense rather than hyper-technical manner and its sufficiency is determined by the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Allen*, 211 F.3d at 973.

### 2. Reliability of Named Informant

Defendants argue that the items seized during the search should be suppressed because the supporting affidavit failed to establish the reliability of the named informant. Defendants are mistaken.

When evaluating information supplied to the police by informants, the factors considered include the informant's credibility, reliability, and basis of knowledge. *Gates*, 462 U.S. at 230; *Allen*, 211 F.3d at 972-73. These three factors, however, should not be evaluated as "entirely separate and independent requirements [that are] to be rigidly exacted in every case." *Gates*, 462 U.S. at 230. A deficiency in one factor may be offset by a strong showing as to another. *Id.* "Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "An affidavit is sufficient 'where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate *may* believe that evidence of a crime will be found.'" *Id.* at 893 (quoting *Allen*, 211 F.3d at 976).

As provided in the affidavit supporting the search warrant, Defendant David Jones was stopped while driving a stolen vehicle. He admitted to the police that he was part of a

larger theft ring that had been stealing vehicles for some time, thus exposing himself to further criminal charges. He also confessed to bringing these vehicles to a chop shop where they were stored, dismantled, and sold. He then accompanied Detective McCarthy, the affiant, to the property identified in the affidavit as 13500 Sanders. Informant Jones identified this location as the place where stolen vehicles were stored, dismantled, and sold. He exhibited familiarity with the premises and illegal activity by showing Detective McCarthy vehicles that he had helped steal; i.e., a bulldozer, and also pointed out other stolen property located at the premises. This location was miles away from Brownstown Township where Jones was apprehended. He pointed out specific items that had been stolen and described in detail how the stolen vehicles were dismantled. He informed the police that his and his cohorts' modus operandi for stealing vehicles was to obtain a VIN number and have a duplicate key manufactured. His credibility was bolstered by the fact that he was caught driving a stolen vehicle that he was able to steal with a manufactured key. All of these facts support a finding that Jones was a reliable and credible informant. *See Greene*, 250 F.3d at 479 (finding probable cause where the informant providing information about the location of stolen property was also "the perpetrator of the crime" and had provided the information "under direct questioning from the affiant"). *See also United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) (considering the reliability of a named informant and holding that "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence"); *United States v. Miller*, 314 F.3d 265, 269-71 (6th Cir. 2002) (same and finding additional support for the

named informant's veracity and reliability because the information provided to the affiant was "sufficiently detailed, rather than being generalized or ambiguous").

### B. Search Warrant - Particularity and Overbreadth

Turning to the specificity of the search warrant, Defendants argue that the inclusion of the phrase, "as well as any other items or any other stolen property," renders the entire search warrant overly broad and thus invalid. Defendants' argument fails. "While a general order to explore and rummage is not permitted, the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *Greene*, 250 F.3d at 477 (internal quotation marks and citations omitted). Thus, "a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Id.* (internal quotation marks and citation omitted). Moreover, even if a phrase is found to be overly broad, the entire warrant is not doomed. *Id.*

> The search warrant described the items to be seized as follows:
>
> One tow truck, either re-tagged or still listed as stolen, one bull-dozer (should be listed as stolen), as well as one cut-up/chopped vehicle on the rear of the stolen tow truck – <u>as well as any other items or any other stolen property</u>, or proceeds from the stolen property, including, but not limited to, tools or types of tools used in dismantling vehicles or to assist in the dismantling of vehicles, as well as any other paperwork establishing ownership of the business at 13500 Sanders.

(N. Miller Mot., Ex. 1, 2/20/06 Search Warrant (emphasis added).) When the challenged phrase is read in context and construed in light of the "illustrative list of seizable items," *Greene*, 250 F.3d at 478, it is not overly broad. "[G]eneral descriptions of property are appropriate if descriptions of specific types of that property have already been furnished, and different types of that property would be relevant in determining the crime." *Id.* (citing cases). Here, specific types of property; i.e., stolen vehicles, cut-up parts of stolen

12

vehicles, proceeds from stolen property, and tools used in dismantling vehicles, have been listed in the search warrant and different types of that described property would also be relevant in determining whether a chop shop is being operated on the premises being searched. Looking at the Return to Search Warrant, all of the seized items, other than miscellaneous paperwork, were either identified directly in the specific list provided or were identifiable as "other stolen property" due to their altered VIN numbers. (Gov't Resp., Ex. 4, 2/21/06 Return to Search Warrant.) These items are the type of property that would be relevant in determining whether a chop shop was being run on the premises being searched.

### C. Search Warrant - Description of the Place to be Searched

Defendants also argue that evidence seized in the search should be suppressed because the search warrant inaccurately described the place to be searched. Specifically, Defendants argue that the search warrant improperly identified the business to be searched as Courtesy Transport but its correct name is Courtesy Transfer and described a "single-story blue-block building" as being present at 13500 Sanders but a blue-block building is located at 13552A Sanders.[3] Defendants assert that the building located on 13500 Sanders has a brown brick exterior and is located adjacent to, but east of 13552A Sanders,

---

[3]As to the correct name of the business located at 13500 Sanders, Defendants argue that it is Courtesy Transfer, not Courtesy Transport. At the evidentiary hearing held on November 16 and 18, 2009, however, Defendants introduced conflicting evidence on that topic. Defendants' Exhibits 14 and 15 are photographs of trucks bearing the name of "Courtesy Transfer, Inc." Defendants' Exhibit 33, on the other hand, is a Certificate of Title dated January 20, 2006 for a 1992 Ford pickup listing the owner and mailing address as "Courtesy Transport Inc., 13500 Sanders St, Detroit, MI 48217."

and the two building's premises are divided by a wall.[4] In light of these differences, Defendants argue that the search of the buildings located at 13500 and 13552A Sanders violated the particularity requirement of the Fourth Amendment and thus the evidence seized from those buildings must be suppressed. The government responds that the search warrant provided a description of the premises to be searched with sufficient particularity to satisfy the Fourth Amendment despite its inaccuracies. This Court agrees with the Government.

The Sixth Circuit has observed that "[t]he test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (internal quotation marks and citations omitted). In both *Durk* and *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002), the Sixth Circuit upheld searches where the warrant listed an incorrect address or property description.

In *Durk*, the court recognized that "[t]he evil that the framers of the Constitution were trying to eradicate with the particularity requirement was the so-called general warrant that allowed officers to search at random. This requirement eliminates generalness and

---

[4] At the evidentiary hearing, Defendants introduced photographs of the dividing wall. (Defs.' Exs. 6-8, Google aerial photographs; Exs. 18 and 27, photographs of various portions of the dividing wall.) These Exhibits show that the wall runs from the back side (or side furthest from Sanders) of the "paint shop" towards the back of the premises but not all the way, is of varying heights, and is much lower as it gets closer to the "paint shop," almost appearing as if there are gaps in the wall.

14

provides both a reason for and limitation of the search." *Durk*, 149 F.3d at 466. It then held that, despite slight inaccuracies in the address and precise location of the property to be searched, the search warrant at issue in *Durk* satisfied the particularity requirement of the Fourth Amendment because it accurately described the home to be searched. *Id.* The *Durk* court further observed that when an executing officer has also provided the supporting affidavit and just come from the place the be searched, a mistaken search is unlikely. *Id.* (citing cases). It observed that "[u]nder these circumstances, no reasonable probability existed that the officers would search the wrong premises as a result of the inaccuracies in the warrant." *Id.*

In *Pelayo-Landero*, the defendant similarly argued that evidence seized from his mobile home should have been suppressed because the description of the premises to be searched in the search warrant and supporting affidavit had a wrong address and location. *Pelayo-Landero*, 285 F.3d at 495. The Sixth Circuit rejected this argument, observing that "[a]n error in description does not . . . automatically invalidate a search warrant." *Id.* at 496. The court found that "the particularity requirement" of the Fourth Amendment was met because "the description includes specific directions from an identifiable point to the mobile home part," and, "[o]nce inside the park, the warrant described the particular trailer by color, by a certain exterior trim, and by a wooden deck." *Id.* at 497. The court further observed that additional circumstances "indicate[d] that there would not have been a mistaken search of other premises" because the same agent that prepared the search warrant affidavit was also the "team leader of the search." *Id.*

The same reasoning and result reached in *Durk* and *Pelayo-Landero* apply here. The inaccuracies in the challenged warrant were unlikely to lead to an unauthorized or mistaken

search. Detective McCarthy had observed the premises to be searched the same day his affidavit was drafted and the same day the search began. At the evidentiary hearing, Det. McCarthy testified that, when preparing the affidavit and search warrant, it was his intent to include in the warrant all the buildings and the entire premises identified by Jones, including the buildings now identified as the "main building" at 13500 Sanders and the "paint shop" at 13552A Sanders. Moreover, he was the officer who provided the supporting affidavit and warrant describing the place to be searched and was also one of the officers that executed that warrant. Thus, under these circumstances, there was no reasonable probability that the executing officers would search the wrong premises as a result of the challenged inaccuracies in the warrant.

### D. Scope of the Search Warrant

In addition to their arguments challenging the description of the premises to be searched, Defendants argue that the scope of the warrant was exceeded when the building located at 13552A Sanders was searched and thus the evidence seized from that building must be suppressed. This Court disagrees.

As stated above, Detective McCarthy testified that it was his intent to search the building identified as the "paint shop" with "13552A" stenciled on it, and further testified that the description provided in the search warrant was meant to include that building as well as the main building with the 13500 address on it. Both Detective McCarthy and Agent Brzezinski testified that, while at the premises with Jones, they remember seeing a large, fenced compound with a larger, main building to the right and a smaller out-building or garage located to the left. Neither of them recalls seeing any marking indicating an address of 13552A Sanders on the smaller building to the left of the main gate and main building.

Agent Brzezinski also testified that, while executing the search and while in the building located at 13500 Sanders, he saw security monitors surveying various parts of this property. One screen showed the inside of the building identified as the "paint shop" and 13552A Sanders. Under these facts, the Court finds that the search did not exceed the scope of the search warrant. *See United States v. Noel*, 938 F.2d 685, 687 (6th Cir. 1991) (relying on *Maryland v. Garrison*, 480 U.S. 79, 85 (1987) and finding a challenged search warrant valid despite its failure to distinguish between three separate housing units located in a single residential home). It was not unreasonable for the officers to view the searched premises as a single parcel of property with a main building and several out-buildings or garages; i.e., the 3-bay garage located at 13552A Sanders that had been leased by Defendants David and William Miller to Defendant Nathan Miller.

### III.   Conclusion

For the above stated reasons, Defendants' motions to suppress are DENIED.


            s/Nancy G. Edmunds
            Nancy G. Edmunds
            United States District Judge

Dated:  November 23, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 23, 2009, by electronic and/or ordinary mail.

            s/Carol A. Hemeyer
            Case Manager

17